The next case today is United States v. Hannah Patch. Appeal number 20-2063. Attorney Jacobs, please reintroduce yourself for the record and proceed with your argument. May it please the court, my name is Ralph Jacobs. I represent Hannah Patch, the appellant in this matter. With the court's permission, I would like to reserve one minute of my time for rebuttal. Yes, you may, Mr. Jacobs. Thank you. May it please the court, the lower court in this case erred in applying sentencing guideline 2D1.8A instead of the more lenient 2D1.8B because the conclusion that Ms. Patch was a participant in the underlying drug dealing conduct was not supported by any evidence but only by her mere presence and rank speculation. She had no operational role in these activities. The only evidence that the prosecution relied on was the fact that Ms. Patch was present in her boyfriend's car, the car of Josh Weldon, who was the principal drug dealer involved in this operation. She was present in his car on a number of occasions when he drove to get resupplied to pick up more drugs from his supplier. Were there only trips with Weldon or was there one trip with another member of the conspiracy? There was another trip where three of them were present. I see. Okay. But the third person was also someone involved in the conspiracy? Yes. Okay. She wasn't there for all of the resupply trips, not even most of them. She was there on some of the trips. There was nothing about her conduct either during these trips or at any other time that suggested that she was there for the purpose of assisting this drug dealing operation as opposed to any number of other speculative reasons why she might be there. The government offered the speculation, and that's really all it is, that she was there to provide some kind of cover in the event that Weldon was stopped by the police. There's absolutely no basis for that kind of speculation, and other than that speculation, there's no evidence that shows that she did anything but acquiesce in her boyfriend's use of her apartment. Mr. Jacobs, we have case law, not directly on point, but I suggest it may be analogous, which says, for example, when a third party is present at the scene of a drug transaction by invitation of the drug dealer, that the sentencing judge can draw an inference that criminals usually want to conduct their activities in secret and don't normally invite innocent parties along. Why isn't that line of cases applicable in this situation? Because I think the cases themselves suggest that we have to drill down to the underlying facts to determine whether that's a reasonable inference. So this court in Heysen looked at Batista Polanco, which was a case in which that inference of and said that's not a blanket inference that can be drawn, we have to look at the facts. In Heysen, the court rejected that inference, pointing out that the person in question was a fugitive, and so the drug dealers would have been comfortable that he wasn't going to blow the whistle on him. Five minutes remaining. Five minutes. because the offense to which Ms. Patch pled guilty was providing or acquiescing in the use of her own apartment for drug dealing. She was present in the apartment. She knew about the drug dealing. That was the offense to which she pled guilty. This sentencing guideline bifurcates people who plead guilty to that offense into two groups. One group, treated more strictly, are those who actually participate in other ways in the underlying activity. The other group, the A2 group, which I contend Ms. Patch should have been in, are those who have no other participation. So that inference that a stranger wouldn't be invited in doesn't apply to the situation of the girlfriend, who is in fact the person who lives at the place where the drugs are stored. When does her current sentence, with good time, when does it expire? The current Bureau of Prisons expiration date is in November. Late November, I believe. I think in my brief it had been sometime in October, but I checked in the past couple of days and it's late November. Did you move to expedite this appeal? I did not. How come? In hindsight, I wish I had. When the case was originally assigned, I did not think of expediting it because my client was in prison, but most criminal defendants are in custody in that situation. When I filed my brief, the court's anticipated scheduling was in July, and I did not see that there would be an appreciable acceleration if I had filed a motion at that point. And perhaps I should have been more aggressive and done that. Her sentence does expire at the end of November. Just two questions, Mr. Jacob. One, what would she have witnessed? What does the record show she would have witnessed on these trips? There is nothing on the record about what she would have witnessed other than they were resupply trips. But I know they're described as resupply trips, but is there anything in the record that suggests she would have known that they were? There's nothing explicit about it other than inferences that one might… I mean, is the inference that she would have known simply that it was that and she was there? Or is there something about what happened in the conduct during the trip that would have furthered that inference?  And the second question I had is, at one point, the district court, as I understand it, in the relevant conduct discussion treats it as joint criminal conduct, describes her as involved in joint criminal conduct. Is that accurate, an accurate account of what the district court says? I think the district court may have made a passing reference in some context, but I don't see that as part of the court's basis. What is just puzzling is if the court was of the view that there was joint criminal conduct here, I just don't know. I mean, I agree with you that it's definitely focused on the trips. But if she was actually jointly involved in the criminal conduct, it seems a little odd to treat her as not being a participant in it. So I just don't know, for purposes of prejudice, what would then be the prejudice? Now, maybe the government's not arguing that. Maybe that's a misunderstanding of what the district court did. But there is that reference by the district court. And I just am not entirely sure how to understand the guideline in a circumstance in which the defense doesn't require you to be a conspirator, but if there's a finding by the district court that they were a conspirator, then does the fact of the joint participation in the conduct, just by virtue of the agreement itself, constitute participation? Because if so, then really who cares about the trips? Participation, I think, focuses on her conduct. And the advisory note, I think, makes that clear. Did that person act in a particular way? You can finish your answer. I think if you focus on her conduct, there's nothing either in her conduct or in her state of mind which shows that she joined this broader conspiracy with the purpose of trying to do anything with the purpose of making a drug conspiracy succeed. She acquiesced in what her boyfriend wanted to do, and that was it. Thank you, Mr. Jacobs. Thank you, Your Honor. At this time, Mr. Jacobs, please mute your audio and video. Mr. Block, please unmute your audio and video. Mr. Block, introduce yourself to begin. Good morning, Your Honors. Benjamin Block on behalf of the United States. The guidelines provision at issue here requires that the court apply the 2D1.1 guidelines unless the defendant had no participation in the underlying controlled substance offense other than allowing the use of the premises. And here the government submitted evidence that showed that the defendant did have some participation. And we're not claiming that it was a lot of participation, but it was some participation in the sense that she made at least six trips with two other co-conspirators in order to obtain drugs to resupply the conspiracy. And to Judge Barron's question about whether there is evidence in the record that she would have known that these were resupply trips, I do think that there are reasonable inferences that can be drawn from the text messages that were sent that show that. First, in several of the text message exchanges, the supplier redirects the conspirators at the last moment as to where they were going. And so there are changes in the destination that occurred during the course of the trip. And those sorts of changes are consistent with drug trafficking. The other fact is that these were down-and-back trips, and the text messages make this clear. What I was interested in was less whether there was evidence to support the inference that they were resupply trips than evidence that her mere presence with her boyfriend in the car would suggest she would have known that. Well, yes, I think when you're in a car with someone and at the last moment your destination changes, when you get in the car and you drive down to Lawrence or southern New Hampshire, meet with someone for a few minutes and then immediately turn around and drive back to Maine, these were down-and-back trips, and that's evidenced by the text messages that would inform her that it was a drug transaction. And there are also text message exchanges in which they talk about the supplier coming and getting into the car. And so that would provide... And if you take the next step and you say her presence there in it constitutes participation in the resupply effort, I take it there's no evidence of her having any contact with the person who was being supplied. There's no evidence of her separate contact with the supplier, correct? Is there any evidence of her having a role? I mean, she was a ride-along, we understand that, but is there any evidence that she served any function, that she was a driver, she was a lookout, that she played any particular role in the resupply activity? There's no indication that she was a driver. I think the district court reasonably inferred from the fact that she participated in at least six and apparently more of these resupply trips that her presence did serve some role. And there are a number of possibilities for that. One is that she served as some sort of lookout. Another is that she provided cover if they were to be pulled over by the police, that having a woman in the car would look less suspicious. I think to direct it to the text in the record, you can see in the text message exchanges between the supplier and Weldon that the supplier was very interested in consistency. The supplier, on the first four dates, May 25th, May 27th, June 2nd, and June 5th, the supplier is inquiring of Weldon, who's coming, what car are you driving? And Weldon is repeatedly saying, same people, I won't bring anyone but my cousin and my girl, same people. And that indicates that the supplier was interested in consistency and that consistency was important to him. He was interested in knowing who was coming, but how would we infer from that that if she didn't go, the supplier would have been concerned? It sounds like the supplier was concerned if there was someone else in the car who had not been there before. Well, the supplier is not just asking who's coming with. On May 27th and June 2nd, the supplier asks, same car, same people, question mark. And so I think, you know, we're talking about whether or not the district court can reasonably... Five minutes remaining, five minutes. This strikes me as a little, I mean, we can all speculate as to possible things she might have done, but what's the evidence that would make any one of those particular speculations more likely than the others? I think the number of times that she participated in these resupply trips fairly implied participatory involvement, which is to... Suppose every time he went to get the groceries, she went along for the ride, and there's no evidence she ever went into the grocery store. Would we say she participated in getting the groceries? I think if you repeatedly... I guess the question is, how many times can you show up for a drug deal? Well, six times, six trips to get the groceries. Yes, I would say if you go to the grocery store six times with someone, then there's a purpose for you being there. And what is the purpose why she's going... It seems to me the suggested purpose why she likes to go for rides with her boyfriend, but there's no evidence she ever goes into the grocery store or pays for the groceries or picks them out or... Well, but if the groceries are coming back to her apartment and they're being prepared and served from her apartment and she is going to the grocery store, then at that point I think there's a reasonable inference to be drawn that her presence at the grocery store is playing a role. And I agree that at a certain point it involves speculation as to what precisely that role was, but I think when you talk about the volume of trips, the volume of participation... What is a little strange is that the... If we focus on the question of whether her continued participation in these trips plus her providing the premises to the boyfriend knowing what they were up to could suggest that she was a part of the conspiracy, it would seem like there would be a plausible inference that she was. But if we focus on what was she doing in these particular trips, it's hard to know what she was doing in these trips, and it's hard to give an account about what it is. So I just think the word participation in the guideline, which is our focus and which you're telling us to focus on, just poses something of a challenge for us to give content to that apart from the idea that she participated in the sense that she was a conspirator. Yes, but I do think you have to look at that totality. You have to look at the fact that she was making her apartment available with knowledge. Well, I guess that's what I'm sort of puzzled by. Your argument is that it matters what she was doing on those trips and you need to assign some role to it, not just that she was on the trips as a member of the conspiracy and that her presence there is evidence of her conspiring. It's not with what she was doing on the trip, but it's where you make what she was doing on the trip. Right, then I was unclear. I think that based on the totality of the evidence here, there is a reasonable inference that she was a participant in the conspiracy. So then if that's the case, then suppose she didn't go on the trips at all and there was just other evidence of her agreement to the conspiracy. Would that be enough to show participation? Yes, if the other evidence of her participation were that she conducted a sale or she received money. There are a number of different ways. Suppose she didn't go on the trips and the only other evidence is that she agreed with them that they should be selling drugs from her apartment and that's why she made it available to them. How would we then apply the participation language in the guidelines? Well, once she becomes a co-conspirator, in this instance she was only charged and convicted of making the premises available. So I think the reason for that was that there was not evidence beyond a reasonable doubt that she was a member of the conspiracy. But here we're talking about a preponderance standard. Mr. Black, do you concede that the government has the burden of proof on this issue? For purposes of this case, we did not make an argument below that the defendant bore the burden of proof. That's not what I asked. Do you concede that the government has the burden of proof on this issue? I would say that in this case we've waived it. Alright, so at least for purposes of this case you make that concession. Correct, but I don't make that concession with respect to future cases. Yeah, okay. Does anyone have any more questions for Mr. Black? Mr. Black, thank you. Thank you very much. Thank you, Mr. Black. At this time you can mute your audio and video. Mr. Jacobs, you can unmute your audio and video. You have one minute of rebuttal. Please introduce yourself on the record to begin. Ralph Jacobs for the appellant. If I can address the question raised about did she serve a role, it's clear from the underlying facts, which the cases teach us we have to drill down to, that she could not have provided any functional role. If we look at the nature of her relationship with Weldon,  the details are in paragraphs 30 and 35 of the pre-sentence report. She was a daily heroin and fentanyl user. The notion that somehow this glassy-eyed, drugged-out girlfriend is going to provide cover is just, not just sheer speculation, it's irrational. The Altamirano court rejected this notion that you can just say someone present in the car is going to provide cover. And as to the alternative speculation, look out. I think this court in Hernandez focused on the very specific kinds of evidence that you need in order to draw that inference. Hernandez, you had someone standing out on a cold porch for an hour, surveying the spot where the drug deal was going to go down, and then fleeing when the police came. Nothing like that happened here. Thank you very much. That concludes argument in this case. Attorney Jacobs and Attorney Block, you should disconnect from the hearing at this time.